[644 NYS2d 1001]

In the Matter of IRWIN E. SIMENOWITZ, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT, Petitioner.

Second Department, July 22, 1996

## APPEARANCES OF COUNSEL

*Frank A. Finnerty, Jr.,* Syosset *(Michael L. Epstein* of counsel), for petitioner.

*Irwin E. Simenowitz,* Mineola, respondent *pro se.*

## OPINION OF THE COURT

Per Curiam.

In this proceeding, the respondent was served with a petition containing seven charges of professional misconduct. The

Special Referee sustained all seven charges. The Grievance Committee moves to confirm the Special Referee's report and to impose such discipline upon the respondent as the Court deems just and proper. The respondent has submitted an affirmation in opposition requesting that the motion to confirm be denied and the petition dismissed.

Charge One alleged that the respondent engaged in conduct adversely reflecting on his fitness to practice law in violation of Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]), and/or neglecting a legal matter entrusted to him by a client, in violation of Code of Professional Responsibility DR 6-101 (A) (3) (22 NYCRR 1200.30 [a] [3]), by failing to either refile or replead an action after the complaint that was served in a medical malpractice suit was dismissed.

The respondent was retained on or about April 30, 1981, to represent Mrs. Gertrude Copeland in a medical malpractice suit against Columbia Presbyterian Hospital. After being served with a summons and complaint, the Hospital moved to dismiss the complaint on the grounds that the damage request was improper inasmuch as it had demanded a dollar amount, which had been prohibited. The Hospital's motion was granted on default on or about November 30, 1981. Judgment was entered dismissing the complaint, on or about March 24, 1982. Pursuant to CPLR 5013, this judgment was not on the merits.

The respondent never moved to vacate the judgment or served another complaint on the hospital. Nor did the respondent ever inform his client that a judgment had been entered dismissing the suit. The Statute of Limitations ran, thereby causing the client's cause of action to be time barred. The client retained Mitchell Berns, Esq. to commence a legal malpractice suit against the respondent. The respondent defaulted in his defense during the legal malpractice suit against him. Judgment was entered against the respondent and the matter proceeded to an inquest before the Honorable Beatrice Shainswit on January 29, 1987. The client was awarded $75,000 in compensatory damages and $25,000 in punitive damages. The punitive damages were based on the following findings of fact: "I find that defendant not only shirked his professional duties, but compounded that with a pattern of misrepresentation to plaintiff, to Dr. Homes, and to her present lawyer. If he had behaved responsibly or spoken truthfully, there was ample time after the complaint was dismissed for plaintiff to obtain

other counsel and preserve her claim—defendant in effect prevented this by deliberately concealing the true facts from plaintiff's representatives, and indeed by expressly lying to them about the status of the case."

Charge Two alleged that the respondent engaged in conduct involving dishonesty, fraud, deceit and misrepresentation, in violation of Code of Professional Responsibility DR 1-102 (A) (4) (22 NYCRR 1200.3 [a] [4]), by failing to inform his client that her lawsuit was dismissed and misrepresenting the status of the lawsuit to the client's representatives, based on the facts outlined in Charge One.

Charge Three alleged that the respondent engaged in conduct adversely reflecting on his fitness to practice law in violation of Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]) and/or failing to file closing statements in fee contingency personal injury suits in violation of 22 NYCRR 691.20 (b) (1).

The respondent represented Glen and Janice Alfonso in a personal injury suit after an accident which occurred on or about October 23, 1976. The case was settled for $4,000 in 1982. The respondent never filed a closing statement with the Office of Court Administration (hereinafter OCA).

The respondent represented Joseph Bailey in a personal injury suit after an accident that occurred on or about February 10, 1979. That case was settled for $17,500 on or about July 12, 1983. The respondent never filed a closing statement with OCA.

The respondent represented Ronald J. Bellistri in a personal injury suit after an accident which occurred on or about February 12, 1978. That case was settled for $5,000 on or about July 6, 1981. The respondent never filed a closing statement with OCA.

The respondent represented Thomas P. Caltabiano in a personal injury suit after an accident which occurred on or about August 17, 1977. That case was settled for $4,800 on or about March 19, 1981. The respondent never filed a closing statement with OCA.

The respondent represented Amy Douglas in a personal injury suit after an accident that occurred on or about July 15, 1977. That case was settled for $8,500 on or about November 24, 1982. The respondent never filed a closing statement with OCA.

The respondent represented Frank and Joan Gallo in a personal injury suit after an accident that occurred on or about

June 19, 1977. That case was settled for $5,500 on or about July 20, 1982. The respondent never filed a closing statement with OCA.

The respondent represented Raymond Gershowitz in a personal injury suit after an accident that occurred on or about October 15, 1977. That case was settled for an amount somewhere between $4,500 and $6,500, in or about 1981 or 1982. The respondent never filed a closing statement with OCA.

The respondent represented Harvey Goldberg in a personal injury suit after an accident that occurred on or about May 9, 1977. That case was settled for $8,000 in or about 1980. The respondent never filed a closing statement with OCA.

The respondent represented David Hiesiger in a personal injury suit after an accident that occurred on or about November 27, 1978. That case was settled for an amount somewhere between $12,500 and $17,500 in or about 1981. The respondent never filed a closing statement with OCA.

The respondent represented Anita and Abe Katz in a personal injury suit after an accident that occurred on or about November 13, 1976. That case was settled for $4,500 on or about July 30, 1982. The respondent never filed a closing statement with OCA.

The respondent represented Betty and Mario Monda in a personal injury suit after an accident that occurred on or about March 9, 1979. That case was settled for $7,000 on or about October 13, 1981. The respondent never filed a closing statement with OCA.

The respondent represented John McMahon in a personal injury suit after an accident that occurred on or about August 8, 1978. That case was settled for $6,000 on or about February 13, 1981. The respondent never filed a closing statement with OCA.

The respondent represented Amelia Mordini in a personal injury suit after an accident that occurred on or about April 3, 1979. That case was settled in or about 1980. The respondent never filed a closing statement with OCA.

The respondent represented Herbert Podell in a personal injury suit after an accident that occurred on or about March 27, 1978. That case was settled for approximately $3,000 in or about 1987. The respondent has never filed a closing statement with OCA.

The respondent represented Jennifer and Paul Seguin in a personal injury suit after an accident that occurred on or about

February 23, 1978. That case was settled for $4,500. The respondent never filed a closing statement with OCA.

The respondent represented Sharon Smikle in a personal injury suit after an accident that occurred on or about June 24, 1975. That case was settled for $6,650 in or about 1980. The respondent never filed a closing statement with OCA.

The respondent represented John Squadrille in a personal injury suit after an accident that occurred on or about July 16, 1978. That case was settled for $3,000. The respondent never filed a closing statement with OCA.

The respondent represented Steven Tricorico in a personal injury suit after an accident that occurred on or about February 2, 1977. That case was settled in or about 1979 or 1980. The respondent never filed a closing statement with OCA.

Charge Four alleged that Irwin E. Simenowitz has engaged in activity that adversely reflects upon his fitness to practice law in violation of Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]) and/or has failed to file closing statements in violation of 22 NYCRR 691.20 (b) (1).

This charge is predicated on the respondent's representation of numerous clients in personal injury actions. In each case, the action was either abandoned or not pursued. There was no recovery for any of the clients. The respondent filed no closing statements. The clients and approximate accident dates are listed:

| | | |
|---|---|---|
| 1) | Vincent Cotrone | 3/29/77 |
| 2) | Valerie Foote | 2/11/78 |
| 3) | Robert C. Fortin | 4/24/76 |
| 4) | Sandra Alward | 6/18/77 |
| 5) | Joseph and Valerie Bartko | 7/05/76 |
| 6) | Samuel Davis, Jr. | 2/22/78 |
| 7) | Dolores Gillin | 8/04/77 |
| 8) | Abraham Holmes | 3/19/78 |
| 9) | Harvey & Leslie Kaplan | 6/21/79 |
| 10) | Daniel Koch | 8/08/78 |
| 11) | Marion and Theodore Lombardi | 8/30/79 |
| 12) | Alfred and Maggie Pendleton | 8/21/76 |
| 13) | Robert A. Phelps | 7/27/76 |
| 14) | Jeanette Ripkin | 7/27/80 |
| 15) | Nathaniel Robinson | 8/30/79 |
| 16) | Sarah Sheehan | 3/77 |
| 17) | Craig & Myra Scheinker | 6/26/76 |
| 18) | David Smith | 11/23/76 |

| | |
|---|---|
| 19) Libia Soto | 12/20/76 |
| 20) Lorraine Sussman | 4/10/79 |
| 21) Americo Vanni | 8/28/78 |
| 22) Jacinta Whitson | 3/30/78 |
| 23) Philip Bakerson | 3/02/78 |

Charge Five alleged that the respondent engaged in conduct adversely reflecting upon his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]), by issuing a check from a designated attorney trust account (hereinafter IOLA) which he knew would be, and was, in fact, dishonored.

On March 3, 1993, the Grievance Committee opened a *sua sponte* investigation based upon notice from the Lawyers' Fund for Client Protection, pursuant to 22 NYCRR part 1300, that a check drawn on the respondent's designated IOLA account had been returned due to insufficient funds. The respondent had issued check number 104, drawn on his designated IOLA account with the Dime Savings Bank of America, payable to himself in the amount of $450. The respondent deposited the aforesaid check into his personal account at Chemical Bank. At the time he issued the check, the respondent knew that there were insufficient funds in the IOLA account and that the check would be and, was, in fact, dishonored.

By letter dated May 21, 1993, the respondent informed the Grievance Committee that he had not maintained a ledger book or similar record for the IOLA account located at the Dime Savings Bank of America.

Charge Six alleged that the respondent engaged in conduct adversely reflecting upon his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]) and/or improperly utilizing a designated attorney trust account (IOLA) for other than escrow purposes, in violation of Code of Professional Responsibility DR 9-102 (22 NYCRR 1200.46).

The respondent issued check number 102 from his 1993 IOLA account, made payable to "Young Israel, Rabbi's Fund", in the amount of $40. The respondent informed the Grievance Committee that this represented a charitable contribution. The respondent issued check number 103, made payable to "1001 Jaws", in the amount of $137.01. The respondent informed the Grievance Committee that this was a business expense. The respondent issued check number 105, made payable to "Rosemary Bryan" in the amount of $17,290. The respondent informed the Grievance Committee that that payment was for a client transaction.

Charge Seven alleged that the respondent failed to maintain adequate escrow records, in violation of Code of Professional Responsibility DR 9-102 (22 NYCRR 1200.46) and 22 NYCRR 691.12.

The respondent knew or should have known that in committing such acts he was guilty of professional misconduct within the meaning of the Rules of this Court governing the conduct of attorneys, the Lawyers' Code of Professional Responsibility, and his inherent duty as an attorney and counselor-at-law.

Based on the evidence adduced, the petitioner's motion to confirm the Special Referee's report is granted.

In determining an appropriate measure of discipline to impose, the respondent asks the Court to consider the absence of any venality or attempt to mislead on his part; the fact that he had already made a reimbursement of $40,000 to his former client and that arrangements have been made with her new counsel to satisfy the judgment in full; that his Dime IOLA account was essentially defunct; and that the required records were meticulously maintained and provided to the Grievance Committee with respect to all of his other accounts. The respondent acknowledges his "administrative lapses" and professes himself to be "contrite and ashamed". He asks that the Court take into consideration his age, health, personal and financial difficulties, as well as his long-standing accomplishments at the Bar. Additionally, the Special Referee found the respondent to be cooperative at the hearing, in that he did not burden the proceeding with frivolous matters.

Notwithstanding the mitigation offered by respondent, he is guilty of serious professional misconduct in bouncing a check drawn on a designated attorney IOLA account, failing to maintain adequate records for that account, and conducting personal, business, and client transactions from the IOLA account. Although his practice was devoted almost exclusively to personal injury matters, the respondent repeatedly neglected to file closing statements over an extended period of time. He further neglected a matter and made misrepresentations concerning it, as found by Justice Shainswit.

Moreover, the respondent's disciplinary history is extensive. By order of this Court dated December 28, 1966, the respondent was publicly censured for entering into an unethical partnership agreement where legal fees would be shared with two attorneys who were about to be disciplined (27 AD2d 576).

The respondent was issued a Letter of Caution, dated April 12, 1985, for neglecting a legal matter entrusted to him, failing

to keep his client informed of the status of the matter, and failing to respond to repeated correspondence from two attorneys on the complainant's behalf.

On November 15, 1985, the respondent was admonished for failing to zealously pursue his client's legal matter. He was issued a Letter of Caution, dated November 14, 1986, for improperly advancing financial assistance to a client. On March 17, 1995, the respondent was issued a Letter of Caution for failing to communicate with clients and failing to inform clients that he would not be able to represent them completely. The respondent was admonished by letter dated September 22, 1995, for failing to return money to a potential client notwithstanding repeated requests therefor.

We find that the totality of circumstances warrants the respondent's disbarment.

MANGANO, P. J., BRACKEN, ROSENBLATT, MILLER and RITTER, JJ., concur.

Ordered that the petitioner's motion to confirm the report of the Special Referee is granted; and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, Irwin E. Simenowitz, is disbarred and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent shall promptly comply with this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, Irwin E. Simenowitz is commanded to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.